THE STATE ex rel. MISSOURI PACIFIC RAILROAD COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION et al.

In Banc, April 2, 1923.

1. **INTERLOCKING PLANT: Apportionment of Cost: Unreasonable.** An order of the Public Service Commission apportioning the cost of constructing an interlocker, between two railroad companies whose tracks cross each other on a viaduct over said tracks, will not be disturbed unless the appellant shows by clear and satisfactory proof, as the statute requires, that the order is unreasonable.

2. ———: **Unnecessary: Viaduct Instead: Apportionment of Costs.** A railroad company filed its formal complaint asking that the Public Service Commission order the installation, maintenance and operation of an interlocking plant at the point where its two main-line and one "runner" tracks cross the single-track of a branch line of another railroad company in a deep cut in St. Louis, and apportion the expenses between the two companies. The other company by answer denied that the crossing is dangerous, denied the existence of immediate necessity for the interlocker, alleged that an overhead crossing is required to meet the situation, and asked that the commission make no order requiring the construction of an interlocker, and delay making any order until such time as the commission may require the two companies to co-operate in

the construction of a viaduct over the tracks of complainant. The commission approved the suggested plan for a viaduct, ordered a separation of grades, rejected the request for delay, and apportioned 25 per cent of the cost against complainant and 75 per cent against defendant. The defendant's single track now crosses complainant's double tracks, but the plan proposed contemplates that it be made a double track, and that is to be done for the purpose of caring for additional train service that may develop during a long future time. The units of operation from an interlocking plant would be 28.75 for complainant and 95.5 for defendant, but the commission found that an interlocker would not be necessary if the viaduct is constructed, until the number of train movements increases, and that a single-track viaduct would cost $208,000, and a double-track viaduct $200,000 additional, which additional expenditure would be for the benefit of defendant. *Held*, that the apportionment of the cost was not unreasonable.

3. ———: **Apportionment of Costs: On Basis of Train Movement.** The number or movement of trains is not the only basis for apportioning the expense of constructing an interlocking plant. Besides, an apportionment proper and reasonable in an interlocking case should not control the apportionment of the costs of constructing a viaduct built to meet increased use anticipated by one of the railroads.

Appeal from Cole Circuit Court.—*Hon. John G. Slate,* Judge.

AFFIRMED.

*James F. Green* for appellant.

(1)   An application for a review of a finding of the Public Service Commission is a proceeding in equity, and this court may make its own finding of facts. Railroad v. Pub. Ser. Comm., 266 Mo. 333; State ex rel. v. Pub. Ser. Comm., 271 Mo. 155; State ex rel. v. Commission, 242 S. W. 938; State ex rel. v. Commission, 277 Mo. 175.   (2) The finding of the commission is opposed to its own decisions, as well as cases decided by this court. Murphy v. Railroad, 2 P. S. C. 4; Chillicothe v. Railroad, 2 P. S. C. 295; Jackson County v. Railroad, 1 P. S. C. 699; Moberly v. Railroad, 4 P. S. C. 296; M. K. & T. v. C. & A. Railroad, 4 P. S. 78; Frisco v. Mo. Pac., 4 P. S.

C. 120; Railroad v. Railroad, 8 P. S. C. 655; M. K. & T. Railroad v. C. & A. Railroad, 275 Mo. 72.

*L. H. Breuer,* General Counsel, and *James D. Lindsay,* Assistant Counsel, for respondents.

(1) The court must take the order as it was made, that is, an order requiring a separation of grades; and the appellant cannot demand that the rule of apportionment appropriate to an interlocker, which appellant opposed, be applied to a separation of grades which it favored, in its own interest. (2) An apportionment of expense, involving no disputed questions of law, but requiring the exercise of administrative judgment only, upon facts technical and practical in railroad operation, when made by the regulatory administrative body possessed of the requisite power and accustomed to deal with questions of like character, should not be disturbed by the court on review, except upon evidence in the record showing unmistakably that the apportionment is merely capricious or arbitrary and so unjust, that it imperatively demands the intervention of the court. Secs. 10,459, 10,535, R. S. 1919; Ozark Power & Water Company v. Public Service Comm., 287 Mo. 522; People v. McCall, 219 N. Y. 84; State ex rel. Ry. v. Commission, 275 Mo. 72, 83; New York & Queens Gas Co. v. McCall 245 U. S. 345. (3) The apportionment of expense is supported by the greater weight of the evidence, is reasonable and not arbitrary, and should be sustained by the court. Southwestern Bell Telephone Co. v. Public Service Comm., 233 S. W. 425.

*W. F. Evans* and *E. T. Miller* for St. Louis-San Francisco Railway Company.

No contract existing between the two railroad companies prescribing the apportionment of the cost of eliminating the grade crossing, the exclusive power to apportion such cost is vested in the commission, and the com-

mission is not held to any fixed basis for apportioning such cost. The commission in apportioning the cost exercises its judgment and discretion in each particular case, and in the absence of a showing that such judgment and discretion have been abused, the finding of the commission based upon substantial evidence is conclusive. Sec. 10459, R. S. 1919; State ex rel. Power Co. v. Public Service Comm., 272 Mo. 645; State ex rel. C. & A. Ry. Co. v. Public Service Comm., 275 Mo. 72; State ex rel. Power Co. v. Public Service Comm., 287 Mo. 522; M. K. & T. Ry. v. Ry., 4 Mo. P. S. C. 60; Public Service Commission v. Railroad Co., 4 Mo. P. S. C. 116.

DAVID E. BLAIR, J.—This case comes here on appeal from a judgment of the Circuit Court of Cole County, approving and sustaining an order of the Public Service Commission in the case of St. Louis-San Francisco Railway Company, complainant, v. Missouri Pacific Railroad Company, defendant, No. 2823. The Public Service Commission will be referred to as "commission"; appellant (defendant in the proceeding before the commission) will be referred to as the "Missouri Pacific." St. Louis-San Francisco Railway was complainant before the commission. It was not made a party in the *certiorari* proceedings before the circuit court. It will be referred to as the "Frisco." It has filed in this court a brief in support of the order made by the commission.

Approaching their respective stations at Tower Grove Avenue in St. Louis from the west, the lines of railroad of the Frisco and Missouri Pacific approximately parallel one another until a point a few hundred feet west of Tower Grove Avenue is reached, where they begin to diverge. The Missouri Pacific lies to the north of the Frisco. A few feet west of Tower Grove Avenue the Oak Hill branch of the Missouri Pacific leaves its main line and runs to the southwest, crossing the tracks of the Frisco at grade, both railroads being in cuts of about fifteen feet at the point of crossing. The Oak Hill branch

has only a single track at the crossing, while the Frisco has two main-line tracks and a "runner" track. A few years ago there was a separation between the street grade and the railroad tracks at Tower Grove, and the tracks of both railroads were lowered twelve or fourteen feet. Prior to that time the tracks at the point of crossing were laid in cuts not over two or three feet deep. Before the grade of the railroad tracks was lowered the Oak Hill branch was double-tracked at the point of crossing.

It appears that the cuts are now so deep that a train upon one line of railroad approaching the crossing cannot be seen by the operatives of the train upon the other railroad approaching the same crossing. The standard rules require that trains approaching the crossing be brought to a stop, and that the locomotives give the crossing signal before attempting to move over the crossing. The Missouri Pacific has adopted the additional precaution of flagging the crossing.

The Oak Hill branch of the Missouri Pacific is the junior railroad. Sometime about 1886 a contract respecting protection at the crossing was executed between the predecessors of the present railroads. In 1903 another contract was executed between the immediate predecessors of the present companies, which provided for an interlocking plant to protect the crossing. Such interlocker had never been constructed. There was put in evidence certain correspondence between the Frisco and the Missouri Pacific wherein the Frisco urged the co-operation of the Missouri Pacific in constructing such interlocker. These negotiations, carried on for several years, were fruitless, and on December 9, 1920, the Frisco filed a formal complaint before the commission, asking that the commission order the installation, operation and maintenance of an interlocking plant at said crossing and apportion the expense thereof between the two railroads. On December 18, 1920, the Missouri Pacific filed its answer with the commission denying that the crossing is dangerous or that there exists immediate necessity for

an interlocking plant thereat. It averred that when the
Tower Grove viaduct was constructed and the tracks of
both railroads were depressed from their original eleva-
tions the Missouri Pacific re-laid only one of its tracks
over the crossing as a temporary expedient; that it con-
templated elevating its Oak Hill tracks so as to pass over
the Frisco tracks at a point a short distance west of the
present location of the crossing, but such plans were not
carried out because of the war and conditions since then;
that neither the Frisco nor the Missouri Pacific should be
required to expend $80,000 or more in the construction of
a temporary interlocker at the present crossing; that
an overhead crossing should ultimately be constructed
at a permanent location at such time as the finances of
the Missouri Pacific and of the city of St. Louis will per-
mit. It appears that the city contemplated a general
separation of street and railroad grades in the vicinity,
to the cost of which it would be expected to contribute.
The prayer of the answer was that no interlocker be
ordered and that the making of any order be deferred
until such time as the commission may require the rail-
roads interested to co-operate in the construction of a
viaduct over the tracks of the Frisco. The city of St.
Louis was brought into the proceedings upon the order
of the commission, but disclaimed any interest in the
case. After hearing the case, the commission rejected
the request of the Frisco for an interlocker. One of its
reasons appears to have been the manifest danger in-
herent in a crossing at grade in deep cuts. It adopted
the suggestion of the Missouri Pacific that an overhead
crossing is required to meet the situation, approved its
plan for a viaduct at a different location, and rejected its
plea for delay. It ordered the Missouri Pacific to elim-
inate the grade crossing and to submit plans therefor
to be approved by the commission and to complete the
work by April 1, 1923. It apportioned the cost thereof
on the percentage basis, 25 per cent to the Frisco and 75
per cent to the Missouri Pacific. The Missouri Pacific
filed its motion for a rehearing, and on January 20, 1922,

the commission overruled such motion and filed a supplemental report and order. Within thirty days thereafter the Missouri Pacific caused a writ of *certiorari* to be issued out of the Circuit Court of Cole County, requiring the commission to certify to that court a full, true and complete copy of the record in the case, together with a true transcript of the evidence. After a hearing the circuit court held the order to be reasonable and lawful and entered its judgment sustaining and approving the same. The Missouri Pacific has brought the case here on appeal from such judgment.

The authority of the commission to make the order is not challenged here and was not questioned below. [Sec. 10459, R. S. 1919.] The sole contention of appellant, the Missouri Pacific, is that the order of the commission is unjust and unreasonable, and that the circuit court erred in approving and confirming such unjust and unreasonable order. The basis for this contention is the apportionment of the cost of grade separation fixed by the commission. The apportionment of one-fourth of the cost to the Frisco and three-fourths thereof to the Missouri Pacific may appear to be harsh and its justification questionable, at least until all the facts are considered. The Frisco maintains two main-line tracks and a runner track at the present point of crossing, while the Missouri Pacific maintains only one main-line track. A traffic study for fifteen days shows average train movements over the present crossing by the Missouri Pacific to be 34.8 and by the Frisco 87.9. But the commission based its order upon other considerations as well. In its supplemental report, it said:

"The defendant's single track now crosses the complainant's double tracks at the place of which complaint is made. A single track seems to be ample to accommodate the defendant's train movements at that point under present conditions. The plans for a separation of the tracks of the parties hereto as proposed by the defendant contemplates the elevation and detouring of the defendant's tracks before reaching the present crossing

so that the same will cross the complainant's tracks over-head and then connect with defendant's main line from Kansas City. The plan, however, as presented by defendant and adopted by the commission requires that this detour line, which is to be elevated, shall provide for a double track instead of a single track, which the defendant now uses. In other words, if the plan for detouring defendant's line were to provide for a single track instead of a double track, the cost of the improvement would be $208,000, and upon that basis, if the complainant were charged with $100,000, it would pay approximately 48 per cent of the expense of doing the work in a manner ample to meet present conditions. *The cost of separating the track at the crossing, to the extent that it is above $208,000 in providing for two tracks, is for the purpose of caring for additional train movements that may develop during a long period of time in the future and should be borne by the defendant.*" (Italics ours).

The Missouri Pacific contended that the construction of an interlocking plant at the present crossing would necessitate including in such plant the junction of the Oak Hill line with its main line. The total number of units to be operated from such interlocking plant would require the operation of the following units:

Missouri Pacific main-line tracks
    to Kansas City, ....................... 69.
Oak Hill tracks, ....................... 22.5
Frisco tracks, ....................... 28.5
                                      ——
                                      120.

Such considerations would apportion 76.25 per cent of the cost of an interlocker to the Missouri Pacific and 23.75 per cent to the Frisco. Appellant insists that it will be compelled to put in an interlocker at the junction of its main and Oak Hill tracks, even with a viaduct constructed at the new point of crossing. The commission found to the contrary. In its supplemental report it said:

"Under the plan adopted, an interlocking plant will

630     SUPREME COURT OF MISSOURI,

State ex rel. Mo. Pac. Ry. Co. v. Public Serv. Comm.

not be necessary at the junction between the defendant's Oak Hill and Kansas City lines until the number of train movements increase at that point. However, were an interlocking plant erected as now sought by complainant at the present crossing of its tracks with the defendant's tracks, it would be necessary to interlock the junction between the defendant's Oak Hill and Kansas City lines as now located.''

The testimony tended to show that it would be necessary to include the junction of the main and Oak Hill lines in the interlocking plant constructed at the present crossing because of its proximity to the crossing. The construction of an interlocker at such junction is not affected by crossing conditions where the grades are separated, but must be determined solely by conditions of Missouri Pacific train movements at such junction. The commission found there is no present requirement for such interlocker.

The commission further found that a single-track viaduct on the Oak Hill lines at the new point of crossing would serve the present needs of the Missouri Pacific and, at that location, would cost $208,000. Such single track at the grade crossing has served for eight or ten years. It is obvious that less delay will occur over the viaduct than over a crossing at grade through an interlocker, the same number of tracks being used. There fore, if the Missouri Pacific has been able to operate its Oak Hill line by means of a single track over a grade crossing, a single track viaduct may reasonably be found to be sufficient for its present needs.

There seems to be sufficient basis for the commission's finding that the construction of a double-track viaduct at the new location will involve the expenditure of approximately $200,000 additional, all of which additional expenditure is for the benefit of the Missouri Pacific to take care of anticipated increases in train movements. The Frisco only asked for an interlocker, the cost of which would be approximately $127,000, if the Missouri Pacific junction was included, and consider-

ably less or approximately $80,000, if it was not included. On the unit basis and including the junction, the cost of construction of such interlocker could reasonably have been apportioned 76.25 per cent to the Missouri Pacific and 23.75 per cent to the Frisco. The Missouri Pacific opposed the interlocker, contended for the delay in making any order and suggested separation of grades. The commission found crossing protection should not be delayed and adopted the Missouri Pacific's suggestion for the overhead crossing, the cost of which to meet present needs was $208,000. In approving the Missouri Pacific's suggestion for the double-track viaduct, the cost was nearly doubled. The commission evidently did not think it would be justified in saddling any of the additional cost upon the Frisco. In apportioning one-fourth of the $400,000 estimated cost of the double-track viaduct to the Frisco, the order required that railroad to pay nearly one-half of the cost of the sort of overhead crossing the commission found was necessary to serve the present needs of the Missouri Pacific.

Considering all the foregoing facts, we are unable to say that the order of the commission is unreasonable. Section 10535, Revised Statutes 1919, places the burden upon the appellant "'to show by clear and satisfactory evidence'" that such order is unreasonable. Section 10459 gives the commission the exclusive power to determine the proportions in which the expense of abolition of grade crossings shall be borne. The determination of that question is within the discretion of the commission, but, of course, such discretion must be reasonably and lawfully exercised.

Appellant contends that the cost of grade separation should have been apportioned at least on the basis of the number of units required in the interlocking plant which apply to the respective railroads, not including the junction, or 44 per cent to the Missouri Pacific and 56 per cent to the Frisco. This is upon the theory that the Missouri Pacific will still be compelled to interlock the junction between its main and Oak Hill lines. This the

commission found was unnecessary when the viaduct is built at the new location for the crossing. The 1903 contract provided a basis for apportioning the cost of an interlocker. The Missouri Pacific refused to carry out such contract. The basis therein agreed upon for an interlocker cannot control the apportionment of the cost of a viaduct.

On the train basis the apportionment would have been 28.5 per cent to the Missouri Pacific and 71.2 per cent to the Frisco. Appellant cites a number of interlocker cases where the commission apportioned the cost on the train basis. We deem it unnecessary to discuss them. An examination of these cases does not show that such basis is the only basis the commission considered in those cases or that they adopted the train basis for all interlocking cases. An apportionment proper and reasonable in an interlocking case should not control the apportionment of the cost of constructing a viaduct, especially a viaduct built to meet the increased use anticipated by one of the railroads. Other considerations may, and in this case clearly did, influence the commission in determining the portion of the cost each of the interested railroads should reasonably pay.

Our conclusion is that appellant has failed to sustain the burden cast upon it by the Public Service Commission Act of showing by clear and satisfactory evidence that the order of the commission is unreasonable. It results that the judgment of the circuit court is affirmed. All concur, except *Woodson, C. J.,* and *Graves, J.,* who dissent.